Douglas Wigdor, I have the privilege of representing Charles Oakley. I'd like to begin my argument with why the District Court's dismissal of the assault and battery claims warrant reversal. The District Court incorrectly summarized Oakley's argument stating that Oakley argued that any use of force was unreasonable because it was unreasonable to ask him to leave in the first place. That is not our argument. While we allege that there was no legitimate basis to throw Oakley out of the garden, we recognize that the garden had the right to do so, so long as it was not done for an unlawful purpose such as discrimination, which I'll get to later. Our primary argument on the assault and battery claims is that the District Court decision made meaningless binding precedent from the New York Court of Appeals, a decision that was rendered after trial in Noonan v. Luther, as the District Court's opinion would give a property owner the immediate right to use physical force once a defendant's know that, which is why when they cite to Noonan, three separate times in their brief they cite to Noonan at pages 3, 19, and 25, they leave out the critical language in that opinion. The opinion says, defendant had the right to withdraw the license to the plaintiff to remain on his premises, and this is the critical language, and if, after having afforded her a reasonable opportunity to go, while she was behaving in a disorderly manner, she refused to go, he had the right to use reasonable force to reject her. Defendants would have this court believe that once the license is revoked, which they had the right to do, they could immediately proceed to use physical force. That is not what the Noonan Court, the Court of Your Honor, the complaint, which obviously is assumed to be true for purposes of a motion to dismiss, makes very clear that Mr. Oakley was not afforded a reasonable opportunity to leave, that he wasn't behaving in a disorderly manner, and that he did not refuse to go, and the point being here, and this all makes sense, and that's why the Noonan opinion is so important, is that before a private security guard can resort to physical force to get somebody to leave when they revoke the license, they need to afford that person a reasonable opportunity to leave, and they have to show that they were behaving disorderly or refused to go. But even if, even if, Your Honor. Mr. Wigdor, this is Judge Carney. You allege in paragraph 42 of the complaint that he, after he was asked to go, he turned around to return to his seat. Was it not reasonable of the guards, even on your honors to paragraphs 35, 37, 38, 41, 45, 46, and 47, that Mr. Oakley did not refuse to go? The point is that he had, and the law makes clear that he should be afforded a reasonable opportunity to leave, but even if, Your Honor, even if he had somehow refused to leave, which is precisely what the complaint does not allege, it alleges the opposite, even if he did somehow refuse to leave, the question then becomes also is what sort of force is reasonable under the circumstances? All of these questions that we're discussing, whether he actually left, what type of force should be used, these are all classic questions of fact that a jury, not even on a motion to dismiss, but a jury should be determining, and whether the force is reasonable, things need to be examined, such as the severity of the crime at issue. I would ask this court, what is the crime? There was no crime, Your Honors, because the only thing that could be asserted is that the license was revoked and that there was a trespass, which is in violation of 140.05 of the penal law, which is a violation. It's not even a crime. So to push Mr. Oakley down to the ground because he allegedly committed a violation seems to me that a backfinder would… Counsel, this is Calabresi, Judge Calabresi. Did they toss him to the ground, or did he, as they were trying to get him out with some force, he was resisting and then went to the ground? No, Your Honor, we… Yes, that is precisely what we allege, Your Honor, is that he, without more… He was pushed down twice to the ground. The first time, we allege that at paragraphs 41 and 42, that security guards grabbed Mr. Oakley and pushed him to the ground, and he was not resisting. We specifically allege that he wasn't resisting, he wasn't trying, he wasn't refusing to go. But the point being is that all of these factors that we're discussing are all classic, classic factual issues. And again, we've alleged in the complaint, as I noted in the paragraphs, that these things, as the defendants say, did not happen. Now, Your Honor, the other thing, other than what the alleged crime at issue was, which there wasn't any crime, it was a violation, is whether the suspect posed an immediate threat to the safety of the officers and others. There's no evidence in the record that he did. And whether he was resisting… Counsel, excuse me, this is Judge Newman. …on the issue of whether the force used was reasonable or not. Are we to look at, consider the tape, the garden tape? Your Honor, that's a good question. We had argued at the district court that the court didn't need to because we had alleged sufficient facts to plausibly assert an assault and battery claim. The defendants wanted… No, that's not, my question is, the tape is on, the judge, the district judge said he was not going to look at the tape. He would only look at the interview. The tape, as I understand it, is an exhibit to a declaration in support of a motion to dismiss. So I'm simply trying to understand, is that film, that video, something we are entitled to look at? Is it really part of our record or not? Your Honor, I'm happy for you to look at the video and we go into great detail in our reply brief as to why the video actually supports our claims, does not hurt the claims. But you can insist we should look at it and include it in our, as a basis of our decision, is that right? I don't have a position one way or the other, Your Honor. I'm not trying to be cute. I think if the court feels that it would be important to look at the video, then we describe appendices… Your Honor, whether something is available to an appellate court is not a question of how we feel. It's either part of our record or it's not, or if it's not, I suppose the one party can supplement the record and agree that we should, but it's not a question of how we feel. Judge Newman? I don't know what is your position on whether we should consider that video. I think Your Honor should consider it, because we go, and I would ask Your Honor to look at our reply brief, because our reply brief goes through it very, very clearly as to what actually transpired. I think that ultimately… Mr. Wigdorf, Mr. Wigdorf, please answer Judge Newman's question, but you have only a minute left in your argument, okay? I think you should look at the video, and I think you should look at it in conjunction with our reply brief. The reason why… All right. Now, I should tell you I've looked at it. I have reserved judgment on whether I should consider it, but I have looked at it, and when I look at it, I see Mr. Oakley's arms go out in an extended motion before he hits the ground. Is that not so? Your Honor, he puts his hands up in a defensive posture, and then he hits the ground. I think it's all open to interpretation by a fact finder. There may be, and there likely is, other video as well that we haven't yet seen or taken in the form of discovery. We haven't yet had the opportunity to depose the security people who were actually effectuating the arrest or hear directly from other people who witnessed what happened. And all of these, these are just all more of the reasons why this case should not have been dismissed on a motion to dismiss and should have proceeded to discovery. Mr. Wigdor, your time has expired, but I want to make sure that Judge Newman has had an opportunity to follow up as he would like. Judge Newman? Well, I know you described him in that video putting his hands up. Do you dispute that, as the other side claims, his hands made contact with the security guard? Your Honor, our position, Your Honor, is that at the time he was first pushed to the ground, the first incident he was pushed to the ground, he was in a defensive posture that would not have warranted a security officer to push him to the ground. That would not, in my, in our view, that's a factual issue, but it would not constitute reasonable force, especially when looked at in light of what he was being accused of, which essentially would be, they just revoked his license, and he would be accused of a violation, which is a simple trespass. All right, thank you. Your time. Go ahead, Judge Calabresi. You cannot hear Judge Newman? Judge Newman? Judge Newman? We're having difficulty hearing you. Judge Calabresi and I find that you're quite faded. Are there any adjustments that you might be able to make, or should we take a brief recess and see if we can fix our connectivity? Well, can you hear me now? That's much better. Judge Calabresi, could you hear then? Yes. Okay. Could you say another few words, Judge Newman, just so we can confirm, please? All right. Is this better? This is much better. Much better. Okay. Very good. Thank you. Then we'll proceed. Mr. Mastro, please. You have 10 minutes. Thank you, Your Honors. Randy Mastro, Gibson Dunning Crutcher for the defendant appellees. Your Honors, I'm going to come right to the heart of it because this is a case that has, this is a dispute that has generated lots of media attention, but Judge Sullivan had it exactly right when he said, in his opinion, at 8-220, quote, from its inception, this case has had the feel of a public relations campaign, end quote, and has no place in being in court. Your Honors, I want to answer your questions that Mr. Wigdor didn't answer. Judge Calabresi, you asked, is there any evidence your client was leaving without some help or force to get him out of there? Short answer, there's none. It's the exact opposite. Let me interrupt for just a minute because, of course, we're not really talking about evidence at this point. We're on a motion to dismiss. Isn't that correct? I understand. I want to go to the allegations in the complaint, and they belie any notion that Mr. Oakley was going to comply with the directive. Let's go to the direct allegations, and Your Honor asked and pointed one of them out in paragraph 40. Let's start with paragraph 34. Oakley pleads that he was, quote, ordered to leave the arena, end quote. The security guards ordered him to leave the arena. He says it was without explanation. So what happens next? Paragraph 35, he does not comply. He asks, quote, why was he being forced to leave the arena, end quote. He is not satisfied with the response that he gets. So paragraph 37, he says, continues to argue with the security guards and says, quote, I did nothing wrong, and I want to watch the game in peace, end quote, he says. And then, as Your Honor, Judge Carney pointed out, paragraph 40 of his own complaint, I'm taking his allegations as true. He says that he turned around and returned to the- Counsel, counsel, counsel, please pause. Judge Calabresi has a question. Go ahead, Judge Calabresi. In the complaint are sufficient to make the statement that he was willing to leave implausible. Completely implausible, Your Honor. You have it exactly right. And as both you and Judge Carney have pointed out, paragraph 40, he, in fact, turns around and returns to his seat. Judge Calabresi, Mr. Wigdor, Mr. Mastro, please pause for a minute. I think Judge Calabresi has a question. Certainly, Your Honor. Judge Calabresi? Are you there, Judge Calabresi? He may have fallen off the call. Let me- Yes, Judge Carney. It looks like he has fallen off. I'm going to try to get in touch with him now. All right. Thank you. He will call back, and we'll just pause for a minute and give you some extra time once he's rejoined. And I have some of the crops. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Judge Calabresi, can you hear us? Yes, I'm now back. I'm sorry. I don't know what happened. I got disconnected by somebody. It may have just been a reception, but I think we can hear you now, sir, whenever Judge Carney is ready. All right. How much time does Mr. Mastro have? We're at the 6 minutes and 46 minute mark-46 seconds long. Okay. Why don't you-actually, given the interruption, why don't you take 8 minutes, please, and begin, Mr. Mastro? Thank you so much, Your Honor. I really appreciate it. And I was trying to respond to Judge Calabresi's question, and I was responding that, yes, the allegations in Oakley's own complaint make it implausible that he was complying in any way or intending to leave. The allegations in his complaint are the antithesis of that because he says flat out he did not comply with the order. He questioned the order. He asked questions, and then he turned around and returned to his seat. Nonetheless, Mr. Mastro, this is Judge Carney. Nonetheless, Mr. Oakley does allege that at that point, the two security guards grabbed him and pushed him to the ground within seconds of his turning around. Why isn't it a jury question to determine whether that was a reasonable response to the replication of a license into his not attacking them but turning around? Your Honor, again, taking the allegations in the complaint, and we'll come to the video evidence later. Taking the allegations in the complaint on their face, as Judge Sullivan pointed out, they do not give rise to an inference that the force used to remove Mr. Oakley was objectively unreasonable. That is the standard. It is Oakley's burden. If I'm in the garden and I'm asked to leave for whatever reason known to me or not known to me and I turn around, then the security guards can grab me and throw me to the ground? In terms of assault under New York law, why doesn't that raise a reasonable question about whether the force used and the circumstances, all the circumstances that are alleged, is reasonable? How can that be determined as a matter of law? Your Honor, for the following reasons, and it has been determined as a matter of law in many cases in both New York and under federal law about Fourth Amendment violations for unreasonable force, which apply the same legal standard. Motions to dismiss, granted, even where the force alleged in the complaint included having to bring someone to the ground, shove them to the ground. I will go over the cases chapter and verse, Your Honors, but the fact of the matter is… Counsel, aren't all those cases police officers effecting an arrest which has already been announced that the subject is under arrest? Short answer is no, Your Honor. Mitchell involved NYU security officers who, quote, forcefully removed the individual from the building. And the Byam case also involved security personnel at New York Presbyterian Hospital who used force. Let's assume, Counsel, Counsel, let's assume that force can be used, some force, but is it clear that any force is reasonable? So they may be able to grab him, which is force, but that doesn't mean that they can throw him to the ground. And the question is, is there a potential question of fact? Is their pleading sufficient to raise a potential question of fact of whether the force used was reasonable under the circumstances? And I respectfully submit to Your Honor that the allegations in the complaint viewed in their totality do not, and Judge Sullivan agreed, do not give rise to an inference that the force used, and this is Oakley's burden, was objectively unreasonable under these circumstances. Is it objectively, potentially objectively unreasonable to toss somebody to the ground? Your Honor, not under these circumstances. Mr. Oakley. Because he was a very big basketball player. Your Honor, it is true that looking at the circumstances, it is more difficult to remove someone who is 6'10", former power forward, towering over the security guards. But Your Honor, I submit the following to you, that at the moment he refused to leave the directive, he is a trespasser. At that point, it gives you the right to use force. It doesn't mean that you can toss a trespasser on the ground. Suppose an elderly gentleman nearing 90, as Judge Newman and Judge Calabresi both are, declines to leave a place and says, I'm not going. Is it reasonable for us to toss that person on the ground rather than rather gently carry him out? Your Honor, I respectfully submit that even under Mr. Oakley's own allegations, he was refusing to leave, and there needed to be an element of force. And if that force included that he had to be brought to the ground, that that was reasonable force, and Oakley cannot show that it was objectively unreasonable, which is his burden. There's case after case where such force has been used. Counsel, Counsel, Judge Calabresi has a question. I have a question about the ADA claim, and that is whether it was plausible to say that Mr. Dolan believed that your client was an alcoholic. Now, I had him removed because of his belief of that. I know that there's an inconsistency between that and the statement with respect to the slander claim, but isn't it that inconsistency? People can plead inconsistent statements, but wouldn't having your client be removed because they thought that he was an alcoholic and Dolan didn't like an alcoholic be a potential violation of the ADA? The short answer is no, Your Honor, for the following reasons. When you – the statements that were actually made by Mr. Dolan were equivocal. He may have a problem with alcohol. I don't know, but Mr. Dolan made very clear that the reason that Mr. Oakley was removed was because he was behaving in a highly inappropriate and completely abusive manner. Those were the words that were used. Mr. Mastro, you have one minute left. Yes. So, Your Honor, it's not that the condition of Mr. Oakley being an alcoholic and Mr. Dolan never said he was an alcoholic, but he suggested that because of the behavior, the conduct, and the government has a right to remove somebody under those circumstances. And one more thing in this regard. You don't have – you have the right to have pleading in the alternative, but you don't have the right to plead directly inconsistent facts where you're saying it's A or it's B. And in this case, they say Oakley wasn't an alcoholic. Dolan knew he wasn't an alcoholic. You can't then come back and say Dolan did it because he was an alcoholic. And one more thing, Your Honor, is about assault and battery. Just take 30 seconds. Your time has expired. Thank you, Your Honor. In looking at the complaint in its entirety, Mr. Oakley, as Jesselyn pointed out, never alleged he was injured in any way or that there was any intent to injure him. And under New York law, including Noonan, on which Oakley relies, New York courts have said that is critical in the case of a trespasser and being able to remove a trespasser from your property. It's an essential element. Noonan said it was of vital importance whether there was actual injury or an intent to injure. Oakley says he was pushed to the ground, but Oakley does never claim – and he never was – injured in any way or that there was an intent to injure him. That's the critical distinction in this area about a trespasser. Thank you. That's why this complaint is suspected. Thank you very much. Thank you very much, Your Honor. Your time has expired. Thank you. Mr. Rigdor, you have two minutes of rebuttal. Your Honor, your hypothetical, Judge Carney, was appropriate. I was thinking of using that, but I didn't want to personalize it. But the point is that there is no case where a licensor revokes a license and then immediately resorts to force such as this. There's not one case in the defendant's brief that would stand for that proposition. And the complaint, as alleged in paragraph 41, specifically says that Mr. Oakley did not, however, refuse to leave the garden, that he merely sought an explanation. That is precisely what Noonan contemplates. It contemplates a reasonable opportunity to leave. You don't have to leave immediately. There is some cushion. And what is reasonable is a fact matter. Just as with Judge Calabresi's question, what force, even if they were permitted to use force, what type of force used is a classic fact issue. With respect to the ADA claim, of course we can plead in the alternative, and they can't have it both ways. On the one hand, they want to argue that the fact finder will conclude that Dolan believed he was an alcoholic and was kicked out because of disability. Or he didn't believe he was an alcoholic, and therefore it's defamation. And if I could turn to the defamation claim, I just want to focus on the alcoholic part of the defamation because I feel that that is the easier of the two. The court assumed that the statements that Dolan made about Oakley's alcoholism were defamatory statements of fact. He dismissed the claims only based on actual malice. He concluded that we didn't plead that. And then that we didn't plead either special damages or per se. With respect to actual malice, everyone knows the standard from New York Times versus Sullivan. But we have put actual malice in numerous, numerous paragraphs in the complaint. I would refer your honors to paragraphs 2, 3, 26-29, 57, 59, 63, 70, 73, 74, 76, and 108. And specifically... You have a minute left. Thank you. At paragraph 70 and 61 and 108, we specifically allege that when Mr. Dolan made the comments about Mr. Oakley, he knew that they were not true, that he knew he wasn't an alcoholic, and he did that to defame him. The special damages is clear. We've alleged in the complaint that because of this, Mr. Oakley's trade of working with people who suffer from alcoholism was suffered by the amount of $40,000. At paragraphs 91 to 95, we very clearly say that the defamatory statements of fact caused him $40,000 in appearance fees. Excuse me. You're saying his trade... You didn't plead any details about his trade, but you're saying that he earns money from making such appearances at rehab centers. Is that a trade? Well, I believe it is, Your Honor. Yes, because that's how he earns his living. And, in fact, the district court actually used that fact to show he was a public figure. So, on the one hand, the district court used it to say he was a public figure, but, on the other hand, said, well, we didn't allege it was a trade. Regardless, we could simply amend it. I mean, there's a lot of things that we could amend if the court were so inclined, including the intent issues on assault, which I think we briefed. But that issue could easily be amended. But, yes, I do believe it was a trade. And in terms of... May I make the last point on per se? Yeah. Thank you, Your Honor. So, on the final point, which is either, it's either per se or special damages, Your Honor, it's clear that the complaint alleges that Mr. Oakley was defamed in his trade or business. I would refer to the Giffrey v. Maxwell case because Oakley's ability to perform as an advocate for people with substance abuse problems was closely tied and impeded by falsely alleging he was an alcoholic. All right. Thank you very much, Mr. Wigdor. Your time has expired. Thank you both. We will reserve decision. Your Honor? The next... Yes. I'm sorry about this, but I did want to respond to Judge Newman's question about looking at the video evidence. Would it be possible for me to have 30 seconds to do that? Go ahead. Take 30 seconds. Thank you very much, Your Honor. Judge Newman, on an appeal, you have every right to review what is in the record. There have been other cases that have reviewed video evidence. And when you view the video evidence, you see it directly belies Mr. Oakley's allegations. He put his hands forward. He fell to the ground. He wasn't shoved to the ground. NYPD officers were with the security guards at all times, and the security guards acted appropriately. So you should view that evidence. Thank you. Thank you very much. All right. Thank you. That concludes argument. Thank you, Your Honor. Thank you. You're welcome. Thank you both.